UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PAMELA SAUNDERS,

                    Plaintiff,

                                          MEMORANDUM & ORDER
          -against-                       17-CV-1394(JS)(ARL)

COUNTY OF NASSAU, ROGER SOKENIS,
STEVEN O'MALLEY, RONALD ROGERS,
in their official and individual
capacities,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:      Rick Ostrove, Esq.
                    Andrew C. Costello, Esq.
                    Leeds Brown Law, P.C.
                    One Old Country Road, Suite 347
                    Carle Place, New York 11514

For Defendants:     Jillian Jagling, Esq.
                    Steven Anthony Torres, Esq.
                    West Group Law PLLC
                    81 Main Street, Suite 510
                    White Plains, New York 10601

                    Peter Adelman, Esq.
                    The Law Offices of Peter Adelman, LLC
                    95 6th Avenue
                    Brooklyn, New York 11217

SEYBERT, District Judge:

          Plaintiff Pamela Saunders ("Plaintiff") commenced this

action against defendants County of Nassau (the "County"), Roger

Sokenis ("Sokenis"), Steven O'Malley ("O'Malley"), and Ronald

Rogers ("Rogers") (collectively, "Defendants") alleging violations

of Title VII of the Civil Rights Act of 1964, New York State Human

Rights Law ("NYSHRL"), and the Fourteenth Amendment as enforced by

42 U.S.C. § 1983 arising out of alleged discriminatory and retaliatory acts on the basis of race.  (Compl., D.E. 1.) Currently pending before the Court is the Report and Recommendation of Magistrate Judge Arlene R. Lindsay ("R&R," D.E. 48), recommending that the Court grant Defendants' motion for summary judgment (Mot., D.E. 39; Defs. Br., D.E. 40-67; Pl. Opp., D.E. 43; Defs. Reply, D.E. 44; Pl. Sur-Reply, D.E. 46).  For the following reasons, Plaintiff's objections (Pl. Obj., D.E. 50; Defs. Obj., D.E. 52) are OVERRULED, the R&R is ADOPTED as stated, and Defendants' motion is GRANTED.

<u>BACKGROUND</u>

The Court presumes familiarity with the facts and ADOPTS the detailed factual summary provided by Judge Lindsay.  (R&R at 1-17); <u>Ford v. Miller</u>, No. 18-CV-1815, 2019 WL 4673445, at *1 (S.D.N.Y. Sept. 25, 2019).  The facts are recited herein as relevant to the Court's analysis, and unless noted, are not in dispute.[1]

I.   <u>The Parties</u>

In 1995, the Nassau County Sheriff's Department hired Plaintiff, who is black, to work as a corrections officer at the Nassau County Correctional Center ("NCCC").  (Compl. ¶¶ 13-14;

---

[1] The facts are drawn from the parties' Local Civil Rule 56.1 Statement and Counterstatement.  (Defs. 56.1 Stmt., D.E. 25; Pl. 56.1 Stmt., D.E. 26.)

Defs. 56.1 Stmt. ¶ 1.)  In 2005, Plaintiff was assigned to NCCC's Medical Unit.  (Defs. 56.1 Stmt. ¶ 1.)  O'Malley also worked in the Medical Unit from 1998 to 2017, when he was transferred to the Security Unit.  (Defs. 56.1 Stmt. ¶ 2.)  Rogers supervised various NCCC employees and units, including the Medical and Security Units, from 2005 until his retirement in December 2015.  (Defs. 56.1 Stmt. ¶ 3.)  Sokenis, one of Plaintiff's supervisors, worked in the Medical Unit from 2011 until his retirement in December 2015. (Defs. 56.1 Stmt. ¶ 4.)

II.  Facts

       On August 30, 2013, Plaintiff submitted an inter-department memorandum (the "2013 Memorandum") to O'Malley wherein she wrote, among other things, that she was "the target of harassment and discrimination" and did not "take this matter further" due to retaliation, was called a "rat" for protecting black inmates, and that she was "blacklisted." (See 2013 Memo., Estes Decl., Ex. 7, D.E. 40-9.)  O'Malley forwarded the 2013 Memorandum to the Affirmative Action Unit pursuant to the Department's Regulations and Equal Employment Opportunity ("EEO") Policy.  (Defs. 56.1 Stmt. ¶¶ 9-10.)  Andre Guilty ("Guilty"), an Affirmative Action Specialist assigned to the Bias Unit, met with Plaintiff who stated that she did not want to file a complaint because she intended to retain a lawyer and because "she had no faith in the office or the process." (Defs. 56.1 Stmt. ¶¶ 7, 12;

Pl. 56.1 Stmt. ¶ 12; Guilty Dep., Estes Decl., Ex. 9, D.E. 40-11, 24:24-25:24.)

Two years later, on June 30, 2015, Plaintiff submitted an EEO complaint (the "EEO Complaint") alleging discrimination and retaliation on the basis of race, arising out of three incidents, summarized below. (EEO Compl., Estes Decl., Ex. 50, D.E. 40-50.) Guilty forwarded the EEO Complaint to Mary Ostermann ("Ostermann"), the Director of Equal Opportunity Employment for the Nassau County Office of Human Resources. (Pl. 56.1 Stmt. ¶ 15; Defs. 56.1 Stmt. ¶ 8.) Ostermann testified that upon receipt of an EEO Complaint, she, along with EEO Representatives, and Affirmative Action Officers, determine if a complaint is a formal complaint, a limited inquiry, or not appropriate for further EEO review. (Defs. 56.1 Stmt. ¶ 16.) Ostermann testified that in a limited inquiry, the EEO Office investigates and a limited inquiry turns into an investigation where a protected class is implicated and an adverse employment action occurred. (Defs. 56.1 Stmt. ¶ 17.) The EEO Office determined that the EEO Complaint did not implicate any violations of EEO or department policies. (Defs. 56.1 Stmt. ¶ 21.)

As for the substance of the EEO Complaint, first, Plaintiff wrote that on December 24, 2014, a Medical Unit nurse needed an officer escort but Plaintiff left the building without approval from her supervisor. (Defs. 56.1 Stmt. ¶¶ 82-83.)

4

Plaintiff alleges another officer "berated" her and was verbally abusive. (Defs. 56.1 Stmt. ¶ 84; Pl. 56.1 Stmt. ¶ 84.) A few days later, Sokenis suggested that Plaintiff seek assistance from the Employee Assistance Program ("EAP") because she told him "you don't know what I'm going through." (Defs. 56.1 Stmt. ¶ 86.) On January 5, 2015, Plaintiff sent Sokenis a memorandum, titled "Verbal Abuse in an Aggressive Threatening Manor by Correctional Staff," describing the December 24, 2014 incident, arguing that her EAP referral was unwarranted, and questioning why other officers' conduct did not warrant an EAP referral. (Jan. 5, 2015 Memo., Estes Decl. Ex. 33, D.E. 40-30.) After this incident, at the request of Rogers, Plaintiff submitted additional memoranda expanding on her allegations. (Jan. 6, 2015 Memo., Estes Decl., Ex. 34, D.E. 40-31; Jan. 8, 2015 Memo., Ex. 45, D.E. 40-42; Jan. 9, 2015 Memo., Estes Decl., Ex. 46, D.E. 40-43.)

On January 7, 2015, Rogers sent an email to O'Malley asking him to "keep the officers involved in this incident separate" and that "Sokenis should have minimal contact with witnesses present when dealing with" Plaintiff. (Jan. 7, 2015 Email, Estes Decl. Ex. 35, D.E. 40-32.)

Second, Plaintiff wrote that on February 5, 2015 she was denied overtime "in favor of white officers." (EEO Compl. at ECF p. 3.) Specifically, two overtime posts were available, one for 3.5 hours in the Core building and another for 2.75 hours in the

832 building.   (Defs. 56.1 Stmt. ¶ 109.)   Although Plaintiff requested the 3.5 hour post, Sokenis assigned her to the 2.75 hour post because Dwyer and Sokenis were working in the Core Building and Sokenis was instructed to keep Plaintiff and Dwyer apart. (Defs. 56.1 Stmt. ¶ 109.)

On February 20, 2015, Plaintiff sent a memorandum to the First Vice President of the Nassau County Sheriff's Correction Officers Benevolent Association and a union delegate on release from the NCCC asking for an investigation into the unequal distribution of overtime.   (Defs. 56.1 Stmt. ¶¶ 13-14.)   Judge Lindsay provided a detailed summary for context and explained the manner in which overtime is distributed.   (See R&R at 8-10.)   Judge Lindsay further explained that:

> In 2013, Saunders earned $67,304.80 in overtime pay, more than any other officer who worked at the NCCC. Consistent with overtime rules, Saunders' placement as the top overtime earner in the NCCC could be taken into account in assigning future overtime.  In 2014, Saunders was the fifty-seventh highest overtime earner among the over 800 corrections officers, earning $38,844.10.   In 2015, Saunders dropped eleven spots to the sixty-eighth highest overtime earner, earning $26,871.27.   Saunders who in 2014 through July 2015 was assigned to the Medical Unit asserts that although she regularly applied for overtime with the Visiting and Security units her overtime pay dropped during this period as a direct result of her having complained about Lima and filing her 2013 [M]emo. The defendants counter this assertion noting that the Visiting Unit overtime log books for 2014 reveals that Saunders never signed up for overtime and only signed up for overtime on eleven days in July 2015. Saunders counters there are other ways corrections officers can be added to the overtime list other than

physically signing the log books.[2] Saunders admits,
however, that there are a multitude of reasons why
overtime can fluctuate from year to year including
fluctuations in the amount of money spent by the County
on overtime. In addition, the number of officers
working, various management initiatives and whether an
officer has taken leave can also cause fluctuations in
overtime. Saunders also acknowledges that overtime in
the Visiting Unit was at a five-year low in 2015.

Indeed, by 2016, Saunders was once again a top overtime
earner, earning $61,106.70, and in 2017, Saunders was
the highest overtime earner amongst of all corrections
officers, earning $129,953.47.

(R&R at 9-10 (internal citations omitted).)

Third, Plaintiff described that while working an
overtime shift on June 23, 2015, Plaintiff was assigned to escort
an inmate to the hospital. (EEO Compl. at ECF p. 4.) Although
Sokenis instructed her to wait, Plaintiff went to the bathroom.
(EEO Comp. at ECF p. 4). As a result, Sokenis assigned another
officer to the transport.[3] (Defs. 56.1 Stmt. ¶ 119.) On

---

[2] Plaintiff disputes this fact by arguing another corrections
officer did not record all of her phone requests for overtime
and by citing to deposition testimony of Joseph Cavanaugh that
the same officer assigning overtime would "pass [Plaintiff] over
for overtime opportunities" in favor of a white officer. (Pl.
56.1 Stmt. ¶ 42.) Upon review of the docket, the Court notes
that neither party annexed the Joseph Cavanaugh deposition
transcript as an exhibit and the Court cannot consider these
allegations as admissible evidence.

[3] Plaintiff disputes this fact in a long narrative. (Pl. 56.1
Stmt. ¶ 119 (citing to response in Pl. 56.1 Stmt. ¶ 115).) Upon
review of Plaintiff's response, the Court finds there is no
dispute that Sokenis assigned another corrections officer to the
hospital run while Plaintiff was in the bathroom. Plaintiff
faults another non-party corrections officer for not informing
her "anyone was looking for her" or that "he was assigned to

June 24, 2015, both plaintiff and Sokenis submitted inter-department memoranda. (Pl. June 2015 Memo., Estes Decl., Ex. 54, D.E. 40-54; Sokenis June 2015 Memo., Estes Decl., Ex. 44, D.E. 40-41.) Sokenis wrote that Plaintiff's "actions of not being on post caused an approximate half hour delay in bringing the [inmate to the hospital] for treatment, and also the time wasted looking for her. I believe she is not telling the truth. [Plaintiff] has a long history of incidents with fellow Officers and Superior Officers. The lack of her accountability for her actions is causing problems for my ability to supervise the Medical Unit" and requested Plaintiff's transfer "out of the Medical Unit and put under the direct supervision of a Corporal due to her inability to go to[ ] or say on her assigned post."[4] (Sokenis June 2015 Memo. at 2.) Rogers thereafter recommended Plaintiff's reassignment to the Security Unit. (Defs. 56.1 Stmt. ¶ 125.)

On June 24, 2015, Plaintiff was placed under Corporal supervision (Defs. 56.1 Stmt. ¶ 132) and effective June 25, 2015,

_____

cover her post" based on her belief that this other officer is racist and "did not like her because she complained to Sgt. Sokenis about his treatment" of black inmates. (Pl. 56.1 Stmt. ¶ 115.) This, however, does not dispute the fact that Plaintiff was in the bathroom, and not at her post.

[4] Prior to this request, Sokenis had requested his own transfer out of the Medical Unit after the February 5, 2015 incident. (Defs. 56.1 Stmt ¶ 112.)

was reassigned to the Security Unit[5] (Defs. 56.1 Stmt. ¶ 127).  On July 13, 2015, Plaintiff's reassignment orders were amended to permit Plaintiff to work under the supervision of a Sergeant for the purposes of overtime if a given area did not have a Corporal assigned.  (Defs. 56.1 Stmt. ¶ 138.)  On March 23, 2017, the Corporal supervision was lifted.  (Defs. 56.1 Stmt. ¶ 139.)

ANALYSIS

## I.  Legal Standards

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72. Where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error."  Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). The district judge must evaluate proper objections de novo and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

## II.  Plaintiff's Objections

### A. Hostile Work Environment

---

[5] In July 2014, Plaintiff requested reassignment to the Security Unit.  (July 2, 2014 Memo., Estes Decl., Ex. 31, D.E. 40-28.)

In opposition to summary judgment, Plaintiff proffered additional facts to support her hostile work environment claim. As recited by Judge Lindsay, Plaintiff alleges that "sometime in late March or early April 2013, [Plaintiff] learned from other officers at the NCCC that" corrections officer John Lima ("Lima") made racist comments regarding black inmates and that she witnessed an incident where Lima was aggressive with a black inmate.  (R&R at 3-4.)  Plaintiff alleges that she complained to a Sergeant that another officer called her an "inmate lover," believed Plaintiff filed a discrimination lawsuit against Lima, and said he would not give her overtime in the Security Unit.  (R&R at 4.)  Plaintiff approached the officer who, according to Plaintiff, admitted to the comments and informed her she was "blackballed" and that no one would hire her for overtime.  (R&R at 5-6.)

Plaintiff first objects that Judge Lindsay applied the wrong legal standard to her hostile work environment claim and therefore incorrectly found that "none of [the claimed of comments] amount of a constructive discharge."  (R&R at 38.)  Plaintiff argues that "the standard is lower—-all that is required is that 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  (Pl. Obj. at 10 (quoting Whidbee v. Garzelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000) (emphasis omitted.)

To sustain a claim, Plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Jian Li v. Chang Lung Grp. Inc., No. 16-CV-6722, 2020 WL 1694356, at *11 (E.D.N.Y. Apr. 7, 2020) (internal quotation marks and citation omitted) (emphasis added). "'[W]hether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment.'" Id. (quoting Fenner v. News Corp., No. 09-CV-9832, 2013 WL 6244156, at *13 (S.D.N.Y. Dec. 2, 2013)). When comparing the above-cited standard to the R&R, the Court concludes that Judge Lindsay applied the correct standard and OVERRULES this objection.

Plaintiff also asserts the conclusory objection that summary judgment is inappropriate "[a]pplying the correct standard, given the severity and the pervasiveness of the comments." (Pl. Obj. at 11.) Having determined that Judge Lindsay applied the correct legal standard, the Court reviews Judge Lindsay's analysis for clear error. Finding no clear error, the Court agrees that none of the complained of comments "rise to the level of severity required to state a claim for hostile work environment." (See R&R at 37-38.) Accordingly, the Court ADOPTS this portion of the R&R.

11

B. <u>Discrimination Claims</u>

Plaintiff next objects to Judge Lindsay's recommendation that the Court dismiss the Title VII, NYSHRL and Section 1983 race discrimination claims. (Pl. Obj. at 11-17.) As relevant here, Plaintiff argued in opposition to summary judgment that the following constituted adverse employment actions: (1) the denial of overtime (as a general principle) and (2) placement under corporal supervision and her transfer to the medical unit that resulted in her placement at the bottom of the Security Unit's overtime list thereby costing her overtime opportunities. (Pl. Opp. at 13-14.) Judge Lindsay found that "none of the actions relied upon by Saunders in support of her race discrimination claim amount to a materially adverse change in the terms and conditions of her employment" and "there is an absence of direct evidence of discriminatory intent in the record." (R&R at 30.)

As a preliminary matter, with respect to the objections: (1) the denial of overtime and a loss of overtime opportunities alone constitutes an adverse action (Pl. Obj. at 12) and (2) regarding discriminatory intent (Pl. Obj. at 15-17), a comparison between Plaintiff's underlying brief and her objections reveal that she has "done little more than rearrange [her] arguments, often using largely identical wording." <u>Media Glow Digital, LLC v. Panasonic Corp. of N. Am.</u>, No. 16-CV-7907, 2019 WL 1434311, at *3 (S.D.N.Y. Mar. 29, 2019) (subsequent history

omitted) (compare Pl. Opp. at 13 (restating the general principal that a denial of and lost overtime opportunities constitutes an adverse action) with Pl. Obj. at 12 (same); compare Pl. Opp. at 15-16 (arguing that Plaintiff was "treated differently than white officers" and was "subject to disparate treatment" to argue an inference of discrimination) with Pl. Obj. at 15-17 (same).)   As such, Plaintiff has "merely reiterated [her] original arguments and the Court will, therefore, review this part of the Report for clear error."   Media Glow, 2019 WL 1434311, at *3.   Finding no clear error, the Court OVERRULES these objections and ADOPTS those portions of the R&R.

As for Plaintiff's transfer to the Security Unit, Judge Lindsay determined that the transfer, and any resulting loss in overtime opportunities, did not constitute an adverse action.   (R&R at 27-28.)   Judge Lindsay reasoned that she was "guided by the principles set forth in" Brown v. City of Syracuse, 673 F.3d 141 (2d Cir. 2012) when finding that Plaintiff's "transfer was certainly undertaken in response to her supervisor's complaint that she lacked accountability and that her actions [caused] a problem in his ability to supervise the Medical Unit" and because the transfer "came on the heels of her having admittedly left her post in violation of NCCC Regulations."   (R&R at 27.)   Plaintiff objects and argues that Judge Lindsay's reliance on Brown was misplaced because Plaintiff's reassignment to the Security Unit

was not a form of discipline and whether a disciplinary policy was "properly enforced" is an issue of fact. (Pl. Obj. at 14.) However, because Plaintiff concedes that her placement under corporal supervision was not "actually discipline" there is no issue of fact as to whether a disciplinary policy was properly enforced. (Pl. Obj. at 14.) Nonetheless, the Court agrees with Judge Lindsay's analysis and Plaintiff's objections regarding Judge Lindsay's reliance on Brown are OVERRULED.

Plaintiff also argues that Judge Lindsay erred in concluding that her transfer to the Security Unit was not an adverse action because it "shows a total disregard for the realities of being a [corrections officer]" because "[i]nteraction with more inmates makes it more likely a CO can be harmed or even killed," and is "far more significant than 'lost pay.'" (Pl. Obj. at 13.) This argument, however, was not raised before Judge Lindsay and is therefore not properly before this Court for consideration. See Brown v. Smith, No. 09-CV-4522, 2012 WL 511581, at *1 (E.D.N.Y. Feb. 5, 2012). Therefore, the Court also OVERRULES this objection and adopts Judge Lindsay's finding that the transfer to the Security Unit was not an adverse action.[6] Kennedy v. Adamo,

---

[6] Indeed, assuming, without deciding, Plaintiff's transfer was considered an adverse employment action, Defendants' proffered reasons for the transfer, as articulated by Judge Lindsay (R&R at 27), are legitimate and non-discriminatory. Phillips v. Long Island Rail Rd. Co., No. 13-CV-7317, 2019 WL 1757176, at *15 (E.D.N.Y. Mar. 4, 2019), R&R adopted, 2019 WL 1758079 (E.D.N.Y.

No. 02-CV-1776, 2006 WL 3704784, at *3 (E.D.N.Y. Sept. 1, 2006) (collecting cases).

Next, Judge Lindsay found that "neither the placement under corporal supervision nor the alleged loss in overtime opportunities associated with that supervision amounted to a materially adverse action" because nineteen days later, Plaintiff's "supervision assignment was amended so that she could work under the direct supervision of a sergeant for the purposes of overtime if a given area did not have [a] corporal assigned" and Plaintiff did not offer "evidence to suggest that she actually lost overtime opportunities in the nineteen days prior to that amendment." (R&R at 29-30 (citations omitted).) Plaintiff objects and argues that "the loss of overtime opportunities can be an adverse action, even if it was only for 19 days." (Pl. Obj. at 15.)

However, there is nothing in the record to support the finding that Plaintiff lost overtime opportunities for the period between her placement under corporal supervision and the date that her assignment was amended. In support, Plaintiff cites to Paragraph 133 of her Local Rule 56.1 statement that states "[a]s

Mar. 25, 2019). Plaintiff's underlying argument that "placement on corporal supervision and her transfer from the Medical Unit occurred for a non-sensical reason as she did nothing wrong" does not establish that "Defendant's reason for [the adverse employment action] is pretextual." (Pl. Opp.at 22-23.)

a result of being placed under corporal supervision, an officer
may lose overtime opportunities . . ."   (Pl. 56.1 Stmt. ¶ 133
(emphasis added).)   Upon review of that paragraph, and the
underlying evidence cited in support, wholly missing is evidence
that Plaintiff actually lost overtime opportunities during those
nineteen days.   As Plaintiff did not proffer evidence that "she
was denied overtime frequently enough to constitute a change in
the terms and conditions of her employment," her claims of race
discrimination in connection with her placement under corporal
supervision necessarily fail and her objections are OVERRULED.
See Collymore v. City of N.Y., 767 F. App'x 42, 46 (2d Cir. 2019).

　　　　Finally, Plaintiff argues that the R&R incorrectly found
that "the manner in which her [EEO] complaints were investigated
did not give rise to an adverse employment action" (R&R at 29)
because "despite identifying eighteen individuals in her EEO
complaint, only one was interviewed (the bad actor)" and a "jury
could infer that this was unreasonable and inadequate" (Pl. Obj.
at 14).   These objections are conclusory and general and the Court
therefore reviews Judge Lindsay's analysis for clear error.   See,
e.g., Oxford Techs., Inc. v. E./W. Indus., Inc., No. 18-CV-1992,
2019 WL 4291584, at *3 (E.D.N.Y. Sept. 11, 2019).   Finding no clear
error, the Court ADOPTS the portion of the R&R that found Plaintiff
"has not presented any nonconclusory evidence that would permit a

reasonable jury to conclude that the defendants had failed to respond in a reasonable and adequate manner." (R&R at 28-29.)

Therefore, the Court agrees with the R&R's conclusion that Plaintiff did not suffer an adverse action and her race discrimination claims are DISMISSED.

## III. Retaliation Claims[7]

With respect to Plaintiff's retaliation claims, Judge Lindsay found for "the same reason previously stated," Plaintiff's alleged adverse actions arising out of the placement under corporal supervision, transfer to the Security Unit, and the investigation of her EEO Complaint "do not amount to materially adverse action." (R&R at 34.) Plaintiff objects that Judge Lindsay incorrectly applied the discrimination standard and argues these actions "are adverse applying the lower [retaliation] standard" and that she "was subjected to retaliatory adverse actions, or so a jury could infer." (Pl. Obj. at 14-15, 18.) Plaintiff also faults Judge Lindsay for "mesh[ing]" the adverse action analysis with the causation analysis under the burden-shifting standard adopted in

---

[7] In support of her retaliation claims, Plaintiff argued in opposition to summary judgment that the following were adverse employment actions: (1) the denial of overtime opportunities by a corrections officer who told her she was "blackballed" and called Plaintiff a "rat" and "inmate lover;" (2) a decline in overtime pay in 2014 after complaining about Lima's abuse of a black inmate; (3) the placement under corporal supervision and the resulting loss in overtime opportunities; (4) the transfer to the Security Unit; and (5) the investigation into Plaintiff's EEO complaint was unreasonable. (Pl. Opp. at 18-19.)

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), when concluding that the denial of overtime opportunities was not a retaliatory adverse action. (Pl. Obj. at 18-24.)

The Court need not address these objections because assuming, without deciding, that Plaintiff established a prima facie case of retaliation, Defendants articulated "legitimate, nondiscriminatory reason[s]" for the alleged adverse employment actions. Lawrence v. Chemprene, Inc., No. 18-CV-2537, 2019 WL 5449844, at *10-11 (S.D.N.Y. Oct. 24, 2019) (collecting cases and finding it appropriate to "skip past the first step of McDonell Douglas" because the "burden of establishing a prima facie case is not onerous, and has been frequently described as minimal.") (internal quotation marks and citations omitted). Upon review of the record, the Court finds that Defendants' proffered reasons, as detailed by Judge Lindsay, for: the limited inquiry into Plaintiff's EEO Complaint (detailed at R&R at 28-29), for reassigning Plaintiff to the Security Unit (detailed at R&R at 26-28), and for an alleged decline in overtime and lost overtime opportunities in connection with these actions, including placement under corporal supervision (detailed at R&R at 8-10, 35-

36) are legitimate, nondiscriminatory, and nonretaliatory.[8] Lawrence, 2019 WL 5449844, at *11.

The McDonnell Douglas analysis thus shifts "the burden to Plaintiff to show that the Defendants' legitimate, nondiscriminatory justifications for" the alleged adverse actions were "were mere pretexts for discrimination." Lawrence, 2019 WL 5449844, at *12. "'In such situations, plaintiff carries the ultimate burden of persuasion and must produce evidence such that a rational finder of fact could conclude that the adverse action taken against her was more likely than not a product of discriminatory animus.'" Id. (quoting Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc., 814 F. Supp. 2d 355, 370 (S.D.N.Y. 2011)). "'Mere speculation is insufficient; a plaintiff must offer specific, admissible evidence of pretext.'" Id. (quoting Fall v. N.Y. State United Teachers, 289 F. App'x 419, 421 (2d Cir. 2008) (summary order)).

Plaintiff's objections regarding "pretext" largely mirror the arguments in her underlying brief. (Compare Pl. Obj. at 18-21 (arguing direct evidence, temporal proximity, and pretext) with Pl. Opp. at 20-23 (same).) Even considering these

---

[8] Plaintiff's objection to the chart analyzing NCCC's overtime expenses are OVERRRUELD. (Pl. Obj. at 23-24; Overtime Expenses, Estes Decl., Ex. 29, D.E. 40-26.) The chart was properly attached to the Declaration of Michael Grunwald and there are thus no concerns regarding authenticity or admissibility. (See Grunwald Decl., Estes Decl., Ex. 15, D.E. 40-17, at ¶¶ 71-93.)

arguments, the Court finds that Plaintiff "offers no other evidence on the record, such as testimony of a third party or written documents, that could lead to any sort of reasonable inference" that Defendants were discriminating and retaliating on the basis of race when conducting a limited inquiry into Plaintiff's EEO Complaint, placing Plaintiff under corporal supervision, reassigning Plaintiff to the Security Unit, and for the alleged decline in overtime and overtime opportunities in connection with these actions.  Ghirardelli v. McAvey Sales & Serv., Inc., 287 F. Supp. 2d 379, 391 (S.D.N.Y. 2003), aff'd sub nom. Ghirardelli v. McAvey Sales & Servs., Inc., 98 F. App'x 909 (2d Cir. 2004).

Indeed, "if this matter were to go to trial, a jury would be presented, on the one hand, with [Plaintiff's] conclusory and unsubstantiated allegations that [race] must have been a factor in [the alleged adverse actions], and, on the other hand, with [Defendants'] sworn testimony that it was not.  Such a conflict does not raise a genuine issue of material fact; rather, it pits sworn testimony against speculation, conjecture and self-serving conclusions." Id. (collecting cases).  Thus, after a review of the entire record in context of the legitimate reasons Defendants proffered for the alleged adverse actions, and assuming Plaintiff "could establish the elements of a prima facie case of retaliation, a rational jury could not conclude that the grounds [Defendants] articulated are false and merely a pretext for retaliation for

protected activity." Id. (citing Gonzalez v. Beth Israel Med. Ctr., 262 F. Supp. 2d 342, 357-58 (S.D.N.Y. 2003)). Therefore, Plaintiff's retaliation claims are DISMISSED.

CONCLUSION

For the stated reasons, Plaintiff's objections are OVERRULED, the R&R is ADOPTED as stated, and Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to mark this case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated: April   28   , 2020
       Central Islip, New York